IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS JOHNSON,      : | |
|     Plaintiff,      : | |
| : | |
| v.      : | CIVIL ACTION NO. 22-CV-0382 |
| : | |
| JOHN WETZEL, *et al.*,      : | |
|     Defendants.      : | |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Thomas Johnson filed this civil rights action pursuant to 42 U.S.C. § 1983 against numerous Defendants alleging that he was illegally and purposefully held in prison for over two years past his maximum sentence and denied "the right to see the parole board." For the following reasons, Johnson's Complaint will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Johnson will be permitted to file an amended complaint as to any claims dismissed without prejudice. Johnson's motion for leave to proceed *in forma pauperis* will also be granted.

**I.      FACTUAL ALLEGATIONS**

Johnson names twenty-two individual Defendants with addresses in both the Eastern and Middle Districts of Pennsylvania. Specifically, Johnson names the following individuals as Defendants: John Wetzel (identified in the Complaint as the Secretary of the Department of Corrections ("DOC") with an address in Mechanicsburg, Pennsylvania); Jeremy John Greiner (identified as an employee at "Central service" in Mechanicsburg), Shelly Fox (from the DOC Records Office in Mechanicsburg), D. Varner (identified as the Chief Grievance Officer of the DOC in Mechanicsburg), John Doe (identified as the Secretary of "Pennsylvania Parole Board & Probation" in Harrisburg); and Jane Doe (identified as a "Record Specialist II" in Harrisburg).

The remainder of the named Defendants appear to be employed by one of three state correctional institutions. Specifically, Johnson names the following Defendants from State Correction Institution ("SCI") Retreat[1]: Superintendent Bernadette Mason, Deputy Charles Stetller, Mr. Johnson[2] (identified as the "Record Supervisor"), Ms. Brotzman (identified as a "Parole agent"), Mr. Dengler[3] (identified as a "Drug & [A]lcohol Supervisor"), Ms. Rawlings, Ms. Mitoski, Ms. Fennigan, Unit Manager Wayne Inniss, and Mr. Kascal (identified as a "Counselor"). From SCI-Coal Township, Johnson names the following individuals: Ms. Nye (identified as the "Record Supervisor") and Superintendent McGinley. Finally, Johnson names the following Defendants from SCI-Phoenix: Jane Doe (identified as the "Record Supervisor"), Unit Manager John Doe, Counselor Jane Doe, and Psychologist Jane Doe.

Johnson avers that the events giving rise to his claims occurred in prison at SCI-Retreat, SCI-Phoenix, and SCI-Coal Township on "many different occasions." Johnson asserts that he was illegally held in prison for more than two years beyond his maximum original sentence[4] "in which all defendants acted [m]aliciously and sadistically for the very purpose of causing [him] harm." He further asserts that Defendants "tampered with the Judges [sic] original sentence and changed the sentence on purpose"; denied all of his "complaints and Grievances"; and kept him "from seeing the Parole board," causing him to "file Grievances just to see the Parole board."

---

[1] SCI-Retreat is a correctional institution in Pennsylvania.

[2] Defendants whose first names are unknown are given "Mr." and "Ms." titles, or job titles, consistent with Plaintiff's Complaint.

[3] Johnson utilizes various spellings of this Defendant's last name, including Dengler, Denglier and Delgier. For purposes of this Memorandum, the name "Dengler" will be used to identify this Defendant, as this was the spelling used in the section of the Complaint identifying all Defendants.

[4] Johnson has not stated the length of his "original sentence". He appears to have been originally sentenced by a Judge Pagano. There is a judge by that name in Delaware County, but there are several defendants with the name Thomas Johnson throughout that county (and throughout Pennsylvania). Johnson is advised to provide more information about his "original sentence" in the event he chooses to file an amended complaint.

Johnson further contends that "the defendants conspired together to keep [him] in prison illegally in retaliation for filing [g]rievances and complaints against them" and they "conspired together to tamper with the court official documents [by] adding illegal extra time to [his] original sentence."

With respect to his conspiracy allegations, Johnson asserts that "[i]t all started" when Dengler said "he was going to make sure that he personally sees to it that [Johnson] max[es] out [his] sentence" and he was going to get Johnson "some extra time to keep [him] in jail where you niggers belong."  Johnson contends that Dengler, Kascal, Inniss, and Brotzman "conspired together to keep [him] from making [p]arole," wrote "bogus reports in [his] records," and "decided that they weren't going to even allow [Johnson] to see the Parole board violating [his] Due process rights."  Johnson submitted a grievance, and Stetller, as acting Superintendent, and Varner, as chief hearing examiner, further conspired with Kascal, Inniss, Dengler, and Brotzman to "cover up . . . what they were doing."  Johnson contends that after he served his entire maximum sentence, he received a new sentence status sheet that showed his maximum sentence was changed and "more illegal time was added to [his] original sentence."

Johnson further avers that although "[r]ecord officer Ms. Johnson[] was well aware of [his] original sentence, and knew or should have known" that he was past his maximum sentence, she refused to answer any of his request slips and "was part of the conspiracy in changing [his] original sentence and holding [him] illegally in prison."  Johnson also contends that Superintendent Mason was aware Johnson was being held illegally, refused to answer Johnson's grievances and complaints, and "conspired with her staff to cover up their wrongdoing."  Johnson asserts that Mason tried to pass the blame onto the Parole board, advising him that he should write them instead.  Finally, Johnson avers that "Parole Board Records

[S]pecialist II [sic]"[5] conspired with Defendants "by falsifying the records" and "sending [him] a false document" that she tampered with by "changing the original Parole board actions."

Johnson asserts that, as a result of Defendants' actions, he has suffered mentally and emotionally, and has experienced stress, depression, and anxiety. Johnson seeks damages in the amount of fifteen million dollars, and further asserts that while he wants everyone "involved in this fired," he specifically wants SCI-Retreat employees Inniss, Stettler, Brotzman, Dengler, Kascal, and Mason terminated.

## II.    STANDARD OF REVIEW

Johnson's motion for leave to proceed *in forma pauperis* will be granted because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires dismissal of a complaint if it fails to state a claim. Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Thus, to survive dismissal, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (quotations omitted). Legal conclusions are disregarded, well-pleaded facts are taken as true, and it is determined whether those facts state a "plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).

As Johnson is proceeding *pro se*, his Complaint is construed liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d

---

[5] Johnson references Parole Board Records Specialist II as Specialist III within his complaint. For purposes of this Memorandum, "Specialist II" will be used to identify this Defendant, as this was the title used in the section of the Complaint identifying all Defendants.

Cir. 2013)). This means that "the relevant legal principle" is analyzed "even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245).

## III. DISCUSSION

It appears from his Complaint that Plaintiff intends to bring a claim under Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under Section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'") (quoting *Rode*, 845 F.2d at 1207). Furthermore, "[b]ecause vicarious liability is inapplicable to . . . [Section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

### A. Illegal Confinement Claims

Johnson avers that he was illegally held in prison for more than two years beyond his original sentence and denied the right to see the parole board. He asserts that all Defendants acted maliciously by: (1) "tamper[ing] with the Judges [sic] original sentence," (2) denying all

his "complaints and Grievances," and (3) keeping him "from seeing the Parole board."

Johnson has failed to specifically articulate the personal involvement of any of the named Defendants in this alleged constitutional violation.  *See Rode*, 845 F.2d at 1207.  In other words, he has not alleged what each of the twenty-two individuals named did, or did not do, to violate his constitutional rights.  For example, in response to the form question in the standard *pro se* complaint template as to whether "anyone else was involved" in the alleged misconduct, Johnson merely lists the unknown Doe Defendants from SCI-Phoenix, but fails to specify how any of these individuals were involved in the alleged violations of his rights.  There are also no specific allegations concerning Defendants Wetzel, Greiner, Fox, Rawlings, Mitoski, Fennigan, Nye, and McGinley.

Further, the facts of Johnson's prolonged illegal confinement are pled in a generalized and conclusory manner.  It is not clear which Defendants were responsible for which events or actions.  Specifically, it is unclear from the Complaint as to the timeline of events in relation to where Johnson was housed, when his civil rights were allegedly violated, and when he was allegedly prevented from appearing before the parole board.  It is also unclear as to when and how Johnson was allegedly kept from appearing before the parole board.  Johnson's Complaint as currently pled thus makes it impossible to determine whether anyone violated his constitutional rights.  This is especially the case given the number of individuals Johnson has named as Defendants.  Because Johnson makes no specific allegations describing how any individual members of the DOC or staff at SCI-Retreat, SCI-Phoenix, or SCI-Coal Township are personally responsible for any alleged constitutional violations, his claims against all of the individually named Defendants will be dismissed without prejudice for failure to state a claim pursuant to § 1915(e)(2)(B)(ii).  *See Rode*, 845 F.2d at 1207; *see also Iqbal*, 556 U.S. at 676.

### B. Civil Rights Conspiracy Claims

Johnson alleges that "the defendants conspired together to keep [him] in prison illegally in retaliation for filing [g]rievances and complaints against them" and they "conspired together to tamper with the court official documents [by] adding illegal extra time to [his] original sentence." More specifically, he contends that SCI-Retreat employees Dengler, Kascal, Inniss, and Brotzman "conspired together to keep [him] from making parole," wrote "bogus reports in [his] records," and "decided that they weren't going to even allow [him] to see the Parole board." Johnson further avers that SCI-Retreat Superintendents Stetller and Mason, together with Ms. Johnson (record officer at SCI-Retreat), Varner (DOC chief hearing examiner), and "Parole Board Records [S]pecialist II," also conspired with Kascal, Inniss, Dengler, and Brotzman to "cover up what they were doing."

The elements of a claim of conspiracy to violate federal civil rights are the following: "(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and, (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States," with the added gloss under Section 1983 that "the conspirators act 'under the color of state law.'" *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 (3d Cir. 2018) (quoting *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001). "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain other actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient." *Rose v. Bartle,* 871 F.2d 331, 366 (3d Cir. 1989) (quoting

7

*Kalmanovitz v. G. Heileman Brewing Co.*, 595 F. Supp. 1385, 1400-01 (D. Del. 1984), *aff'd*, 769 F.2d 152 (3d Cir. 1985)).  "[A] bare assertion of conspiracy will not suffice." *Twombly*, 550 U.S. at 556.

      Johnson's allegations about his alleged prolonged confinement cannot support a plausible civil rights conspiracy under Section 1983.  Johnson's conspiracy allegations are wholly conclusory.  He has not alleged facts regarding the formation of a conspiracy between any of the named Defendants or any other individuals, nor has he set forth factual allegations addressing the period of the conspiracy or actions taken by the alleged conspirators to achieve the alleged purpose of prolonging his confinement.  Because Johnson's conspiracy allegations centering on the parties' involvement with his prolonged confinement are not particularized, they are insufficient to satisfy the requisite pleading standard.  *Iqbal*, 556 U.S. at 678; *Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1975).  Johnson's civil rights conspiracy claims will thus be dismissed without prejudice.

      **C.**      **Claims Based on Grievances**

      Johnson repeatedly states throughout the Complaint that he filed prison grievances but that they were denied or ignored.  To the extent that Johnson alleges a violation of his rights solely with respect to the denial of, or nonresponse to, his grievances, such claims fail because "prison inmates do not have a constitutionally protected right to a grievance process." *See, e.g.*, *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*).  Accordingly, any facts alleged by Johnson about grievances do not give rise to a plausible claim for relief.  *See, e.g. Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) (agreeing that a prisoner's constitutional claim cannot be based upon their perception that someone failed to investigate their grievances because prisoners do not have a "free-standing constitutional right to an

effective grievance process. . . .")

## IV.     CONCLUSION

For the foregoing reasons, Johnson's Complaint will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  All claims involving a denial of or lack of responses to grievances will be dismissed with prejudice because the defects in those claims cannot be cured.  Johnson's remaining claims will be dismissed without prejudice to allow amendment in the event that he can allege sufficient facts to cure the defects identified in those claims.  Due to Johnson's *pro se* status, he will be given an opportunity to "flesh out [his] allegations by . . . explaining in the amended complaint the 'who, what, where, when and why' of [his] claim." *Davis v. Internal Revenue Serv.*, No. 21-4728, 2022 WL 407639, at *3 (E.D. Pa. Feb. 9, 2022) (citing *Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at * 4 (D.N.J. Oct. 16, 2019)).  Any amended complaint should clearly describe the factual basis for Johnson's claims against the relevant Defendant or Defendants and how each Defendant was involved in the alleged denial of his constitutional rights.

An appropriate order follows.

                                                  BY THE COURT:

                                                  /s/Wendy Beetlestone, J.

                                                  **WENDY BEETLESTONE, J.**