IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS JOHNSON, : | |
|     Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 22-CV-0382 |
| : | |
| JOHN WETZEL, *et al.*, : | |
|     Defendants. : | |

## MEMORANDUM OPINION

Plaintiff Thomas Johnson, a former inmate proceeding *pro se*, alleges that the actions of multiple Defendants resulted in his being wrongfully detained in prison for over 2 years. The Court construes Plaintiff's Amended Complaint, which alleges violations of his "8[th] & 14[th] Amendment[] rights," to set forth claims for violations of Plaintiff's Eighth Amendment and Fourteenth Amendment procedural due process rights pursuant to 42 U.S.C. § 1983 ("Section 1983").[1]

Defendants John Wetzel, Jeremy Greiner, Shelly Fox, Dorina Varner, Thomas McGinley, and Lindsay Nye ("Responding Defendants"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), move to partially dismiss Plaintiff's Amended Complaint. All Responding Defendants seek to dismiss the claims against them to the extent they are based on their official—rather than individual—capacities. Defendants Varner and Wetzel further seek to dismiss the claims against them in their individual capacities.

For the reasons that follow, Responding Defendants' Motion shall be granted.

---

[1] *See, e.g.*, *Suber-Aponte v. Borough of Pottstown*, 2016 WL 5341299, at *2 (E.D. Pa. Sept. 23, 2016) (construing constitutional claims as being brought pursuant to Section 1983); *Mathew v. Friends Hosp.*, 2007 WL 9809210, at *1 (E.D. Pa. Aug. 27, 2007) (same); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* pleadings are to be construed liberally); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013) (same).

1

I. **FACTUAL BACKGROUND**

In his Amended Complaint, Plaintiff, a former inmate in the Pennsylvania Department of Corrections ("DOC") system, proceeding *pro se*, alleges that he was held for 2 years and 2 months beyond the proper term of his prison sentence. Plaintiff contends that the actions of the multiple Defendants contributed to his wrongful detention, including through their participation in a grievance process he used to raise the issue of his alleged overdetention.

As relevant here, Plaintiff alleges as follows: former Secretary of Corrections[2] John Wetzel "violated [P]laintiff[']s right to procedural due process under the 14[th] amendment[] by failing to establish a system by which . . . [P]laintiff could effectively challenge the computation of [his] sentence"; Chief Grievance Coordinator Dorina Varner "did nothing" to "fix a problem especially after everything was in the grievance" but instead "conspired and covered up for the defendants in this case" by issuing a "Lackadaisical response" to Plaintiff's grievance; Records Specialist Jeremy Greiner was "responsible for issuing inmates their []Sentence Status Summary[] sheet" and "conspired with the parole board and falsified the court documents, and conspired with some of the defendants to . . . cover up their wrong doings" by signing off on a sentence summary that was "flawed and incorrect"; Assistant Records Administrator Shelly Fox was "aware of [Plaintiff's] complaint," "knew that defendants . . . had violated the []DOC Policy[] and . . . violated [Plaintiff's] constitutional 8[th] & 14[th] Amendment" rights, and issued a "lackadaisical" response to his grievance stating "that she checked the sentence status and said that [his] new maximum sentence was correct according to the records" but "was being misleading in her response because she knew or should have already known that [Plaintiff] was

---

[2] Where not clear from Plaintiff's Amended Complaint, the job titles of the Responding Defendants are drawn from their own briefing.

2

being held illegally"; Superintendent Thomas McGinley was "well of aware of [P]laintiff's problem" as well as "appeals to him concerning [P]laintiff being held in prison illegally past [his] maximum date" yet "failed to take the proper steps and contact the appropriate authorities who can look into this matter"; and Records Supervisor Lindsay Nye "chose not to respond to [Plaintiff's] complaint, or to correct the problem when she knew that [he] was clearly way over [his] maximum sentence" and "chose to cover up and conspired with the other defendants" while "not correcting or notifying the proper authorities."

Plaintiff appears to seek monetary damages for his alleged over-detention, but does not specify the amount he seeks in his Amended Complaint.[3]

## II. DISCUSSION

Plaintiff's Amended Complaint, liberally construed, *see Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021), brings suit against Responding Defendants in both their official and individual capacities.

### A. Official Capacity Claims

#### i. *Eleventh Amendment Immunity*

Responding Defendants move to dismiss Plaintiff's claims against them in their official capacities for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). They argue that, to the extent they are sued in their official capacities, Plaintiff's Section 1983 claims against them are barred by Eleventh Amendment sovereign immunity. As relevant here, the Eleventh Amendment to the United States Constitution is a "jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum*

---

[3] The Amended Complaint supersedes the initial Complaint. *W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 171 (3d Cir. 2013). In his initial Complaint, however, Plaintiff stated he sought $10 million for his "pain [and] suffering" and wanted "everybody involved in this case fired."

*Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)).

"State governments and their subsidiary units are immune from suit in federal court under the Eleventh Amendment," *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 253 (3d Cir. 2010), which provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Eleventh Amendment immunity extends to individual state employees when they are sued in their official capacities for damages. *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)); *Betts*, 621 F.3d at 254.

Here, Responding Defendants are state officials that fall within the scope of Eleventh Amendment immunity. *See Downey*, 968 F.3d at 310 (concluding Eleventh Amendment immunity prohibited claims against Pennsylvania DOC officials after finding "[t]he Pennsylvania Department of Corrections is undoubtedly a state instrumentality and its officials are state agents.").

While Eleventh Amendment immunity does not apply where (1) Congress has authorized such a suit in the exercise of its power to enforce the Fourteenth Amendment, (2) a state has waived its sovereign immunity by consenting to such a suit, or (3) a private party sues a state official for prospective injunctive or declaratory relief to end ongoing violations of federal law, *see Ex parte Young*, 209 U.S. 123 (1908); *MCI Telecomm. Corp. v. Bell Atl. Pennsylvania*, 271 F.3d 491, 506 (3d Cir. 2001), none of these exceptions applies here. *See In re Flonase Antitrust Litig.*, 879 F.3d 61, 68 (3d Cir. 2017) (listing exceptions to Eleventh Amendment state sovereign immunity). Congress has not abrogated Eleventh Amendment immunity with respect to Section

4

1983 claims.  *Quern v. Jordan*, 440 U.S. 332, 340-41 (1979); *Ellington v. Cortes*, 532 F. App'x 53, 56 (3d Cir. 2013).  Pennsylvania has specifically withheld consent to suits in federal court against the Commonwealth that are otherwise barred by Eleventh Amendment immunity.  42 Pa. Cons. Stat. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); *Ellington*, 532 F. App'x at 56.  And Plaintiff does not state he is seeking injunctive relief.[4]  Accordingly, none of the exceptions to Eleventh Amendment state sovereign immunity apply here.

Moreover, "[r]egardless of Eleventh Amendment immunity . . . § 1983 does not create a cause of action against states or state officials acting in their official capacities."  *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 224 n.9 (3d Cir. 2015) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 71 (1989)).  In other words, state officials, when sued for money damages in their official capacities, are not considered "person[s]" for the purposes of Section 1983.  *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (citing *Will*, 491 U.S. at 71 (1989)).

Therefore, to the extent that Plaintiff sues Responding Defendants in their official capacities for money damages, his claims pursuant to Section 1983 are barred.

### B. Individual Capacity Claims

Defendants Varner and Wetzel further move to dismiss the claims made against them in their individual capacities pursuant to Federal Rule of Civil Procedure 12(b)(6) for "failure to

---

[4] In any case, Plaintiff is no longer in state custody and, as a result, cannot seek prospective injunctive relief related to his confinement.  See *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003), *as amended* (May 29, 2003) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims." (citing *Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993))).  While an inmate's transfer from a prison facility does not moot equitable or declaratory claims where the challenged action is "(1) too short in duration to be fully litigated prior to its cessation or expiration; and (2) there [is] a reasonable likelihood that the same complaining party would be subjected to the same action again," *Sutton*, 323 F.3d at 248 (internal quotations omitted) (citing *Abdul-Akbar*, 4 F.3d at 206), there is no indication those conditions apply here.

state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When analyzing a motion to dismiss, the complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Legal conclusions are disregarded, well-pleaded facts are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief." *Id.* at 210-11.

Plaintiff's allegations specific to Defendant Varner are as follows:

> Defendant Varner, is the Chief final of appeals Grievance coordinator who job is to look and investigate all grievances, and to be fair and partial especial in this serious matter and to correct of fix a problem especially after everything was in the grievance, there is simply no way that defendant Varner, had (truly and thoroughly investigated plaintiff complaint because the truth was in the records) and there is no way that anyone could have missed it, but instead defendant Varner, did nothing but conspired and covered up for the defendants in this case, defendant Varner, had an obligation to take my Grievance complaint seriously, she has the power to investigate this serious matter, she has the power to access all plaintiff records, from all agencies, the parole board records, and the state SCI records room, central office record room, there is no way that defendant Varner, didn't know or seen that plaintiff was way over his maximum original state sentence, once defendant Varner, seen that I was clearly incarcerated over (21 yrs. 11 months and 11 days) that should have raised a red flag and should have taken the appropriate steps to send my complaint to the appropriate authority who has the power to correct and release me instead of her Lackadaisical response to my Grievance.

6

Plaintiff's allegations specific to Defendant Wetzel are as follows:

Defendant Wetzel is the Secretary of Department of corrections and had violated plaintiff right to procedural due process under the 14 amendments by failing to establish a system by which I plaintiff could effectively challenge the computation of my sentence, for plaintiff had tried every available proper steps to have this problem corrected, and every last one of his agency has failed. Counselors, unit managers, prisons record offices, Grievances offices, parole agents at the prisons, Superintendents, the record office at Central office, the Parole board record office, has all failed, for plaintiff had exhausted all available avenues and procedures that was available to him, and it is clear that defendant Wetzel, has a failed system and needs to be fix, for there is no way that any inmate should half to spend over 2 yrs. In prison illegally, fighting to get out, and prove that their records offices are wrong, to allow his subordinates to write bogus fictitious reports in the records, and to cover up the corruption and to have no system in place to correct this problem.

These allegations, when liberally construed and viewed in the context of the rest of Plaintiff's Amended Complaint—the thrust of which is that Plaintiff was detained past his maximum sentence date due to the actions of the various Defendants as well as inadequate procedures to prevent such overdetention—accuse Defendants Varner and Wetzel of violating Plaintiff's Eighth Amendment and Fourteenth Amendment procedural due process rights. Plaintiff clarifies as much in his opposition to Responding Defendants' Motion, stating "Defendant[s] John Wetzel, Jeremy Greiner, Shelly Fox, Dorina Varner, Thomas McGinely, and Lindsay Nye, are all defendants who [were] involved in violating Plaintiff['s] 8[th] & 14[th] amendment rights[.]" Accordingly, it is necessary to determine whether his allegations against Defendants Varner and Wetzel are sufficient to state such claims at the motion-to-dismiss stage.

### i.     Eighth Amendment

"[T]he detention of an inmate 'beyond the termination of his sentence . . . violate[s] the [E]ighth [A]mendment's proscription against cruel and unusual punishment' if the 'incarceration

7

[is] without penological justification.'" *Beto v. Barkley*, 706 F. App'x 761, 768 (3d Cir. 2017) (quoting *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993)). Similarly, the Third Circuit has stated "there can be no doubt that imprisonment beyond one's term constitutes punishment within the meaning of the [E]ighth [A]mendment." *Sample v. Diecks*, 885 F.2d 1099, 1108 (3d Cir. 1989) (citing *Hutto v. Finney*, 437 U.S. 678, 685 (1978)); *see also Wharton v. Danberg*, 854 F.3d 234, 241 (3d Cir. 2017) (discussing overdetention claims under the Eighth Amendment); *Teets v. Wetzel*, 2022 WL 4386683, at *2 (W.D. Pa. Sept. 22, 2022) (same). To recover for overdetention in violation of the Eighth Amendment, it is necessary to show:

> (1) a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) a causal connection between the official's response to the problem and the unjustified detention.

*Beto*, 706 F. App'x at 768 (quoting *Montanez v. Thompson*, 603 F.3d 243, 252 (3d Cir. 2010)).

a. Defendant Varner

As a preliminary matter, it is necessary to determine whether Varner was personally involved in the alleged constitutional violation—*i.e.*, Plaintiff's overdetention—such that she could be liable.

A defendant in a civil rights action pursuant to Section 1983 "must have personal involvement in the alleged wrongs to be liable" and "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (citations omitted); *see also Goodwine v. Keller*, 2012 WL 4482793, at *7 (W.D. Pa. Sept. 26, 2012).

Plaintiff's allegations against Varner center on her review of his grievance appeal and inadequate response to his grievance—*i.e.*, her "[l]ackadaisical response." Besides her review of

his grievance, Plaintiff does not allege that Varner was involved in the events giving rise to his alleged overdetention.  For instance, Plaintiff does not allege that Varner was involved in the setting, calculating, or any modifying of his release date or in the enacting or implementing of any policies or procedures concerning the determination of his release date.

Courts in this jurisdiction have repeatedly held that reviewing or denying an inmate grievance does not, without more, establish the level of personal involvement required to support a constitutional violation claim against that defendant.  *See, e.g.*, *Jones v. Wetzel*, 737 F. App'x 61, 66 n.4 (3d Cir. 2018) (mere review of grievance did not establish requisite personal involvement to state Eighth Amendment claim); *Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015) ("Merely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim."); *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (act of merely responding to or reviewing a grievance not sufficient to demonstrate personal involvement for Eighth Amendment claim where plaintiff did not "allege particularized facts demonstrating [defendant's] involvement in the conditions giving rise to [plaintiff's] injury"); *Beto v. Barkley*, 2015 WL 619640, at *6-7 (E.D. Pa. Feb. 12, 2015) (receipt of plaintiff's complaints and grievances concerning his "continued illegal detention" were "insufficient to raise the inference that . . . defendants were personally involved in the alleged violation of plaintiff's constitutional rights"); *Goodwine*, 2012 WL 4482793, at *7 (listing cases) ("The denial of a grievance . . . is insufficient to establish personal involvement.").

Here, while Plaintiff alleges that Varner should have been aware of his alleged overdetention by virtue of reviewing and responding to his grievance, he does not allege sufficient facts supporting that she was personally involved in the events forming the basis of his

Eighth Amendment claim.  *Cf. Teets*, 2022 WL 4386683 (plaintiff adequately alleged an Eighth Amendment overdetention violation against prison records officials by alleging that their job duties including reviewing his records "to ensure that he was not detained beyond his maximum incarceration date" and were involved in determining his maximum sentence date).

Accordingly, Plaintiff fails to state an Eighth Amendment claim against Varner in her individual capacity and the claim must be dismissed.

### b. Defendant Wetzel

Plaintiff's allegations against Defendant Wetzel focus on Wetzel's actions in his supervisory, or policymaking, capacity—*i.e.*, with respect to his failure "to establish a system by which [Plaintiff] could effectively challenge the computation of [his] sentence."

The Third Circuit has "identified two ways in which a supervisor-defendant can be liable for unconstitutional acts undertaken by subordinates in a Section 1983 action." *Teets*, 2022 WL 4386683, at *4 (citing *DeJoie v. Folino*, 2015 WL 4127590, at *2 (W.D. Pa. July 7, 2015)). First, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cnty. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).  Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."  *Id.* (citation omitted).

Additionally, the Third Circuit has developed the following requirements to establish liability for an official in a supervisory or policymaking role on an Eighth Amendment claim:

> The plaintiff must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure.

*DeJoie*, 2015 WL 4127590, at *3 (citing *Sample*, 885 F.2d at 1118); *see also Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001).  The Third Circuit has further stated that one way a plaintiff can make out a supervisor liability claim is by demonstrating that the supervisor "failed to respond appropriately in the face of an awareness of a pattern of such injuries" or by showing that the "risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of supervisory officials to respond will alone support findings of the existence of an unreasonable risk, of knowledge of that unreasonable risk, and of indifference to it."  *Beers-Capitol*, 256 F.3d at 134 (citing *Sample*, 885 F.2d at 1118).

With respect to Wetzel, Plaintiff fails to include sufficient factual allegations to state an Eighth Amendment claim.  Plaintiff's Amended Complaint does not contain allegations that can be read to plausibly conclude that Wetzel acted with deliberate indifference or that he participated in violating Plaintiff's rights, directed others to violate them, or had knowledge of or acquiesced in his subordinates' violations.  While Plaintiff alleges that Wetzel "allow[ed] his subordinates to write bogus fictitious reports in the records, and to cover up the corruption and to have no system in place to correct this problem," he provides no specific factual allegations to support this extremely vague assertion.  Moreover, Plaintiff fails to identify any specific policies or practices Wetzel employed that would have created an unreasonable risk of a constitutional violation, and further fails to allege that Wetzel was aware of such an unreasonable risk and was nonetheless indifferent to it.

Accordingly, Plaintiff's Eighth Amendment claim against Wetzel in his individual capacity will be dismissed, but Plaintiff will be granted leave to amend his Complaint to address the deficiencies noted *supra*, if possible.

### ii.     *Fourteenth Amendment Procedural Due Process*

"Under the [F]ourteenth [A]mendment, a state may not authorize the deprivation of a protected liberty or property interest without providing a procedure in connection with that deprivation that meets the requirements of due process." *Sample*, 885 F.2d at 1114 (citations omitted). In order to state a claim for a procedural due process violation pursuant to Section 1983, a plaintiff must allege the following:

> (1) that he was deprived of a protected liberty or property interest; (2) that this deprivation was without due process; (3) that the defendant subjected the plaintiff, or caused the plaintiff to be subjected to, this deprivation without due process; (4) that the defendant was acting under color of state law; and (5) that the plaintiff suffered injury as a result of the deprivation without due process.

*Id.* at 1113; *see also Teets*, 2022 WL 4386683, at *6 (discussing the adequacy of pleadings for a procedural due process claim predicated on the deprivation of plaintiff's liberty interest "by being forced to remain incarcerated past his maximum detention date"). "[W]hen a policymaking official establishes a constitutionally inadequate state procedure for depriving people of a protected interest and someone is thereafter deprived of such an interest, the official has 'subjected' that person to a due process violation." *Sample*, 885 F.2d at 1114 (citations omitted).

As to the demands of due process applicable here, "procedural due process requires that an inmate with a challenge to the calculation of his release date promptly be listened to by someone having authority to decide the challenge or pass it on for further review and decision[.]" *Id.* at 1115; *see also Simmons v. Doe*, 2011 WL 4458131, at *8 (D.N.J. Sept. 23, 2011). Further,

due process entitles a prisoner to have an "opportunity to have his claim [regarding his alleged over-detention] meaningfully and expeditiously considered." *Sample*, 885 F.2d at 1115.

### a. Defendant Varner

As discussed above with respect to Plaintiff's Eighth Amendment claim, Plaintiff's allegations against Varner center on her review of his grievance appeal and inadequate response to his grievance—*i.e.*, her "[l]ackadaisical response." Plaintiff's allegations, liberally construed, can be understood to assert three potential underlying deprivations as the basis for his procedural due process claim against Varner: (1) the loss of his liberty by being overdetained; (2) the absence of adequate grievance procedures or policies to prevent his overdetention; and (3) the absence of a favorable response to his grievance.

As to the first potential ground, similar to his Eighth Amendment claim, Plaintiff fails to allege sufficient facts supporting that Varner was personally involved in the alleged deprivation. As alleged, Varner was not involved in the determination or imposition of Plaintiff's sentence leading to his alleged overdetention. Instead, Plaintiff sues Varner based on her alleged "failure to take corrective action when [his] grievance[] . . . [was] referred to [her]," which does not support her being personally involved in the alleged constitutional violation. *Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)); *see also Goodwine*, 2012 WL 4482793, at *7 ("The denial of a grievance . . . is insufficient to establish personal involvement.").

As to the second potential ground, there are two insufficiencies with Plaintiff's allegations. The first is that the Complaint contains nothing to suggest that Varner was personally involved in the enactment of any grievance procedures or policies or, indeed, that Varner had any authority to enact any policies or procedures governing the grievance process or

13

any other process by which he could have raised his complaints of overdetention to prison officials. The second problem is that inmates do not have a constitutionally protected interest in grievance procedures themselves. *See Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) ("Inmates do not have a constitutionally protected right to the prison grievance process."); *Anderson v. Pennsylvania*, 196 F. App'x 115, 117 (3d Cir. 2006) (plaintiff did not have "a liberty interest protected by the due process clause in the inmate grievance procedures").

As to the third potential theory of deprivation, it is settled law that the failure of a prison official to provide a favorable response to an inmate's grievance does not support a procedural due process claim. *Gordon v. Vaughn*, 1999 WL 305240, at *2 (E.D. Pa. May 12, 1999) (listing cases) (dismissing claims against grievance coordinators); *see also Okey v. Strebig*, 531 F. App'x 212, 215 (3d Cir. 2013) (citing *Flanagan v. Shively*, 783 F. Supp. 922, 931-32 (M.D. Pa.), *aff'd*, 980 F.2d 722 (3d Cir. 1992)); *Marsh v. Link*, 330 F. Supp.3d 1045, 1049 (E.D. Pa. 2018); *Brown v. Williams*, 2018 WL 5777492, at *2 (M.D. Pa. Nov. 2, 2018). This is a corollary of the broader principle that inmates do not have a protected liberty interest in prison grievance procedures. *See Burnside*, 138 F. App'x at 416; *Anderson*, 196 F. App'x at 117.

Because each of the potential theories of deprivation underlying Plaintiff's procedural due process claim against Varner in her individual capacity fails for the reasons *supra*, the claim must be dismissed.

      b. <u>Defendant Wetzel</u>

Plaintiff alleges that Wetzel failed to "establish a system by which [he] could effectively challenge the computation of [his] sentence." While the Third Circuit has determined that due process requires an inmate challenging the calculation of his release date be "promptly . . . listened to by someone having authority to decide the challenge or pass it on for further review

and decision," *Sample*, 885 F.2d at 1115, Plaintiff does not state he was denied notice or prompt opportunity to be heard under any specific procedures enacted or employed by Wetzel in connection to his complaint of overdetention in order to plausibly allege a due process violation. While Plaintiff refers repeatedly to the grievance process and its alleged shortcomings, it is not clear if he asserts he was denied a prompt opportunity to be heard, either through the grievance process or otherwise. In other words, without additional, well-pled factual allegations, the Court cannot conclude that the "available procedures did not result in anyone with authority promptly responding to Plaintiff's inmate communications by deciding Plaintiff's challenge to his continued detention or passing his challenge on to someone else for further review and decision[.]" *Bosold v. Warden, SCI-Somerset*, 2013 WL 315714, at *6 (E.D. Pa. Jan. 28, 2013). Moreover, due to the disorganized nature of Plaintiff's Amended Complaint, which fails to set forth an intelligible timeline of events related to Plaintiff's complaints of overdetention to prison officials, the Court cannot determine in any case whether Plaintiff has plausibly alleged he was not "promptly" provided with an opportunity to be heard. *See Sample*, 885 F.2d at 1115.

Accordingly, Plaintiff's procedural due process claim against Wetzel in his individual capacity will be dismissed, but Plaintiff will be granted leave to amend his Complaint in order to correct the deficiencies with respect to this claim, if possible. *See, e.g.*, *Teets*, 2022 WL 4386683, at *6 (dismissing procedural due process claim predicated on overdetention allegations where plaintiff failed to allege whether he was or was not provided with notice or an opportunity to be heard).

An appropriate order follows.

                                    **BY THE COURT:**

                                    **/s/Wendy Beetlestone, J.**

                                    **WENDY BEETLESTONE, J.**